UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIAN DAVID PALACIOS OBREGON,<br>Petitioner(s),<br>v.<br>TODD M. LYONS, et al.,<br>Respondent(s). | CASE NO. C26-2462-KKE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner, proceeding pro se, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Dkt. No. 1. He challenges the legality of his ongoing confinement and the adequacy of his medical care at the Northwest ICE Processing Center ("NWIPC"). Having reviewed the record, the Court concludes that Petitioner's care at NWIPC has been so deficient as to make his confinement punitive in violation of due process. Accordingly, the Court GRANTS the petition and ORDERS the Petitioner's release.

## I. BACKGROUND

This is Petitioner's second habeas petition. The Court has recounted the relevant factual and procedural background in its earlier order on Petitioner's motion for a temporary restraining order ("TRO") (*Obregon v. Bondi ("Palacios Obregon I")*, No. C26-0484-KKE, 2026 WL 575690, at *1–2 (W.D. Wash. Mar. 2, 2026)), and in its order on Petitioner's first habeas petition (*Palacios Obregon v. Blanche* ("*Palacios Obregon II*"), No. C26-0484-KKE, 2026 WL 1223424

(W.D. Wash. May 5, 2026). The Court incorporates by reference the factual history set forth in its prior orders and does not repeat it here.

## II. LEGAL STANDARD

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. ANALYSIS

Petitioner contends that the inadequacy of his medical care at NWIPC violates the Fifth Amendment. Dkt. No. 1 at 5–6. The Court addressed and rejected a similar medical-care claim in resolving his first habeas petition, finding that "Petitioner's medical team has made consistent, albeit not always successful, efforts to treat what has proven to be a treatment-resistant condition with symptoms that wax and wane over time." *Palacios Obregon II*, 2026 WL 1223424, at *5–6 (citation modified). In light of recent developments, however, the Court concludes that the Government's repeated failed attempts to provide Petitioner with adequate treatment including a diagnostic colonoscopy have rendered Petitioner's care so deficient as to make his confinement punitive in violation of due process.

In determining whether a "challenged condition, practice, or policy" of civil detention violates due process, "the dispositive inquiry" is whether the challenged practice "constitutes punishment." *Block v. Rutherford*, 468 U.S. 57, 583 (2015). A practice is "punishment" if it is either "intended to punish" or "excessive in relation to [its non-punitive] purpose"—i.e., if it is

"employed to achieve objectives that could be accomplished in so many alternative and less harsh methods[.]" *Jones v. Blanas*, 393 F.3d 918, 933–34 (9th Cir. 2004) (alteration in original) (first quoting *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004), and then quoting *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1484 (9th Cir. 1993)). In this context, "[r]etribution and deterrence are not legitimate nonpunitive governmental objectives." *Bell v. Wolfish*, 441 U.S. 520, 539 n.20 (1979).

Failing to provide minimally adequate medical care can constitute "punishment" for purposes of the due process analysis. Indeed, in the prison context—where detainees have been adjudicated guilty of a crime—officials inflict cruel and unusual punishment by knowingly disregarding a detainee's serious medical need. *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)); *see also Calloway v. Contra Costa Cnty. Jail Corr. Officers*, No. C 01-2689 SBA, 2007 WL 134581, at *30 (N.D. Cal. Jan. 16, 2007), *aff'd*, 243 F. App'x 320 (9th Cir. 2007). And while the Eighth Amendment does not apply to civil detainees (who cannot be subject to any punishment—cruel and unusual or not), their due process rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Bell*, 441 U.S. at 535 n.16 ("Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment."). Notably, "a pattern of failures of care by [a petitioner's] custodians and medical providers" can establish a finding that conditions are excessive in relation to the purposes of immigration detention. *Sorio v. Hermosillo*, No. 2:25-CV-02492-TL, 2026 WL 413530, at *10 (W.D. Wash. Feb. 13, 2026).

With these standards in mind, the Court considers whether the Government has acted to provide Petitioner with the reasonable level of safety required of someone in his medical condition.

Considering the Government's longstanding failure to adequately treat Petitioner's serious medical condition, including multiple failed attempts to provide Petitioner a colonoscopy, the Court concludes it has not.

Petitioner suffers from a treatment-resistant strain of Heliobacter Pylori ("H. Pylori"). As a result, since roughly January 2025, and throughout his detention, Petitioner contends that he has suffered severe abdominal pain, vomiting, fecal incontinence, and gastrointestinal bleeding, requiring him to wear adult diapers, causing distress, and harming his dignity. *Palacios Obregon I*, 2026 WL 575690*,* at *1–2. In May 2005, after several failed rounds of H. Pylori treatment, a gastroenterologist recommended Petitioner receive a colonoscopy to obtain further diagnosis and treatment options. *Id.* at *2. "Due to 'administrative delay[,]' the referral was not placed until July 16—two months later— and was then approved and scheduled for September 3, 2025." *Id.* (citation omitted). The colonoscopy did not go ahead as planned because Petitioner went on a hunger strike and was told he could not be sedated in a weakened condition. His strike appears to have ended in or around October 2025 (Dkt. No. 10 ¶¶ 29–30), and the procedure was rescheduled for February 26, 2026. *Palacios Obregon I*, 2026 WL 575690*,* at *2. The record does not reflect why the procedure could not have been scheduled for an earlier date.

At this point, in the context of addressing Petitioner's motion for a temporary restraining order ("TRO"), the Court expressed "concerns about the level of care" Petitioner was receiving at NWIPC and noted that the record "reflect[ed] several potential gaps in care." *Palacios Obregon I*, 2026 WL 5756, at *3. But given the early stage in proceedings, the Court concluded it could not determine whether "these potential gaps" rose to the level of a constitutional violation and denied Petitioner's TRO motion. *Id.* *3–4.

The rescheduled February colonoscopy did not go forward. The Government argued generally that the procedure was called off due to "improper bowel preparation" and provided a

declaration from Dr. Wang stating that Petitioner had vomited during preparation which necessitated canceling the procedure. But Petitioner argued that he was inadequately prepared because NWIPC failed to ensure he was given a proper diet in the days leading up to the procedure, failed to ensure he was placed on a liquid diet for a full day, and was only given a brochure in English detailing these necessary preparations hours before the procedure. *Palacios Obregon II*, 2026 WL 1223424, at *6. According to Petitioner, instead of being taken to medical segregation with the appropriate time necessary to prepare for the procedure, he was placed into disciplinary segregation at 6:00pm the night before his appointment. Dkt. No. 34 at 2, *Palacios Obregon v. Bondi*, No. 26-cv-0484 (Mar. 11, 2026). He further explained that though he had not been given the diet or medications described in the brochure (of which he could read approximately 80%), NWIPC staff gave him a liquid to consume and told him it would suffice notwithstanding NWIPC's failure to provide the necessary diet ahead of time. *Palacios Obregon II*, 2026 WL 1223424, at *4.

After the failure of the February attempt, Petitioner's colonoscopy was rescheduled for May 12, 2026. In resolving Petitioner's first habeas petition, the Court held a status hearing on March 25, 2026, at which the Government explained the steps that ICE would take in advance of Petitioner's next appointment, including a meeting with a registered nurse and translator, provision of a low fiber diet, and placement in medical segregation at least 24 hours in advance of the procedure. *Id.* at *4. The Court ultimately denied Petitioner's medical care claim in part because NWIPC had "rescheduled his colonoscopy and intends to take additional steps to ensure he is prepared for the procedure in May." *Id.* at *6.

But the May 12, 2026, colonoscopy also did not go forward. The Government contends that the clinic was again unable to complete the procedure "due to the inadequacy of Petitioner's colonoscopy preparations." Dkt. No. 9 at 7, 13–14; *see also* Dkt. No. 10 ¶¶ 39, 42. Dr. Wang

attests that Petitioner was provided with two gallons of GoLYTELY bowel preparation solution and preparation instructions and that he was unaware of any problems in Petitioner's preparation. *See, e.g.*, Dkt. No. 10 ¶ 38 ("[A]s far as [ICE Service Health Corps ("IHSC")] was aware at the time, Petitioner's preparation went without issue."). However, Petitioner attests that he informed NWIPC medical staff on multiple occasions during his preparation for the May 12 appointment that the solution was not working, and yet medical staff took "no corrective action." Dkt. No. 13 at 5. The record does not indicate whether Petitioner was provided with the appropriate diet or medications in the days leading up to his May 12 appointment, or whether any of the other promised interventions were delivered. Dr. Wang's declaration is silent on this point. *See* Dkt. 10.

Petitioner's colonoscopy was then rescheduled for August 31, 2026. But as Petitioner noted in his traverse (Dkt. No. 13 at 2), this date conflicted with Petitioner's immigration merits hearing, which was also scheduled for August 31, 2026. The Court therefore ordered the Government to address this apparent scheduling conflict in a supplemental return, among other issues. Dkt. No. 14. In its supplemental return, the Government stated the conflict was "[d]ue to a scheduling oversight[.]" Dkt. No. 15 at 1. The Government stated it had filed a notice with the immigration court, informing the court that it would ask for a continuance "to the earliest possible rescheduling date" if Petitioner became unavailable due to his colonoscopy. *Id.*

On September 1, 2026, Petitioner filed a declaration informing the Court that Petitioner's colonoscopy on August 31 did not go forward, yet again due to inadequate preparation. Dkt. No. 18 at 3. According to Petitioner, he was not given adequate bowel preparation solution, the nursing staff made an error regarding the timing of when he was to take a laxative, and staff mistakenly served him solid food in violation of the mandatory liquid diet. *Id.* After the failed procedure, despite having not eaten, Petitioner was taken to his immigration merits hearing, which the

immigration judge ultimately rescheduled for October 14, 2026. *Id.* at 2, 6. The record reflects no information about efforts to again reschedule the procedure.[1]

In addition to repeatedly preparing for these failed procedures, Petitioner contends he has suffered severe pain during his detention due to his H. Pylori infection, including "severe gastrointestinal pain on a daily basis," "vomiting blood," and "bowel incontinence," which requires him to wear adult diapers. Dkt. No. 13 at 5. According to Petitioner, the Government's failure to provide medically necessary procedures has resulted in "prolonged pain, deterioration of [his] condition, and substantial risk of permanent injury." Dkt. No. 1 at 2. As he explains, Petitioner "live[s] with daily pain" and is "extremely anxious because [he is] worried [he has] cancer" or some other "grave complication of [his] health" that has gone undiagnosed because he has not received a colonoscopy. Dkt. No. 18 at 3. Petitioner further alleges in his traverse that the NWIPC has provided him no treatment for his infection since March 2026, and that he has not received any pain medication for "approximately two to three months." Dkt. No. 13 at 4. Finally, Petitioner contends that he has been placed in isolation in segregated housing, without adequate access to hygiene facilities or showers.[2] *Id.*; Dkt. No. 18 at 5.

In light of the record above, the Court concludes that Petitioner's detention has become punitive. Taken together, this "pattern of failures of care by Petitioner's custodians and medical providers that more likely than not resulted in [] extreme pain" has rendered Petitioner's detention unconstitutionally excessive in relation to the purposes of immigration detention. *Sorio*, 2026 WL 413530, at *10. The Court has repeatedly expressed its concerns with the adequacy of Petitioner's

[1] The Court recognizes that this declaration presents only Petitioner's version of events. However, the Government has not endeavored to provide the Court with any contrary information in the intervening eleven days since he filed it. The Court finds that given the circumstances, further delay occasioned by additional briefing is not appropriate.

[2] While the Government's supplemental return explains the rationale for Petitioner's placement in segregated housing, it does not dispute his allegations regarding limited access to hygiene facilities and showers. Dkt. No. 15 at 2.

medical care. In response, the Government has never disputed the medical necessity of providing Petitioner a colonoscopy and has assured the Court that it "intend[ed] to take additional steps to ensure" Petitioner was properly "prepared" for his rescheduled appointment. *Palacios Obregon II*, 2026 WL 1223424, at *6. When that failed for the May 12 procedure, the Government again reiterated that it planned to "recei[ve]" specific "instructions on Petitioner's prep," before his August 31 colonoscopy, given that "normal prep" was not successful for Petitioner. Dkt. No. 9 at 7. Yet preparation for the August 31 colonoscopy was also unsuccessful. After four failed attempts, the Court is unable to credit the Government's assurances that it can provide Petitioner with this necessary procedure and constitutionally adequate medical care for his H. Pylori infection. Under the unique facts of this case, the Government's demonstrated inability to provide Petitioner with minimally adequate medical care constitutes deprivations so excessive that the conditions of detention alone take the Government's detention of Petitioner out of the realm of constitutional civil detention and render it punitive. *See Reyes v. Blanche*, No. 2:26-CV-02490-TLF, 2026 WL 2078700, at *1–2 (W.D. Wash. July 17, 2026) (finding conditions of detention to be "punitive" where respondents were "unable to properly care for" petitioner or treat his medical conditions at NWIPC).

The Government does not meaningfully argue otherwise. Rather, the bulk of the Government's briefing relies on authority in the criminal detention context. *See* Dkt. No. 9 at 12–13. Though the Government briefly recites the standard applicable to punitive civil detention claims, it argues only that Petitioner has not provided evidence that his medical care "constitutes an express intent to punish him." *Id.* at 15. The Government does not explain why the repeated failures outlined in this order are insufficient to show "conditions that are excessive in relation to the government's legitimate interest in executing removal orders." *Sorio*, 2026 WL 413530, at *10. And the Government's general assertions about the capabilities of NWIPC's medical staff

are unpersuasive against this record. *See* Dkt. No. 9 at 13 ("If a specialist is needed, as has been the case here, arrangements for referrals and treatment with outside specialists will continue to be made."). Rather, the Court finds that Petitioner has shown by a preponderance of the evidence that Petitioner's medical care (and denial thereof) included objectively unreasonable failures of care that render his detention unconstitutional. *See Sorio*, 2026 WL 413530, at *9 ("Both the duration of detention *and* the conditions of the individual's confinement are relevant to a determination of whether the restriction is excessive. This has been true since the very establishment of the prohibition on punitive civil detention, in *Wong Wing*, 163 U.S. 228." (internal citations and quotations omitted)).

The Court therefore finds the appropriate remedy in this case is release. *See Reyes*, 2026 WL 2078700, at *2–3 (granting TRO and ordering release due to inadequate medical care at NWIPC). District courts "enjoy 'broad' discretion in fashioning remedies for habeas relief." *Johnson v. Uribe*, 700 F.3d 413, 425 (9th Cir. 2012) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). Petitioner has now been detained for almost two years. And throughout his detention, he has suffered from an extremely painful condition that the Government has shown itself unable or unwilling to adequately treat. He has been awaiting a colonoscopy since May 2025—a period of almost one and a half years. Petitioner's immigration proceedings are ongoing, and there is no removal order in place. Petitioner's next immigration hearing is reportedly scheduled for October 14, 2026. Dkt. No. 18 at 6. Thus, there are no current plans to remove Petitioner. And the Government has never argued that Petitioner poses a flight risk or danger to the community. Accordingly, Petitioner's continued detention no longer serves the legitimate, non-punitive purpose of ensuring his presence for removal. *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (holding that civil detention becomes punitive when "there is no regulatory purpose that can rationally be assigned to the detention").

Because he is subject to punitive detention for which he has had no due process of law, the Court finds that Petitioner is in custody in violation of the Constitution of the United States, and his immediate release is required.

## IV. CONCLUSION

Accordingly, the Court ORDERS as follows:

(1) The Petition for a Writ of Habeas Corpus (Dkt. No. 1) is GRANTED.

(2) The Government SHALL release Petitioner from detention **no later than ONE DAY from the date of this order**, under appropriate conditions of release.

(3) **No later than September 14, 2026**, the Government SHALL provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

Dated this 11th day of September, 2026.

Kymberly K. Evanson
United States District Judge